J-S75010-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| BRYAN WILLIAM CONLEY | |
| Appellant | No. 496 WDA 2019 |

Appeal from the Judgment of Sentence entered February 13, 2019
In the Court of Common Pleas of Erie County
Criminal Division at No: CP-25-CR-0002061-2018

BEFORE:  STABILE, KUNSELMAN, and PELLEGRINI,* JJ.

MEMORANDUM BY STABILE, J.:                **FILED JULY 15, 2020**

Appellant, Bryan William Conley, appeals from his judgment of sentence of 48 months of restrictive intermediate punishment followed by three years of probation for two counts of terroristic threats and one count each of simple assault, disorderly conduct and harassment.[1]  On appeal, Appellant challenges the sufficiency of the evidence supporting his convictions.  We affirm.

The trial court accurately summarized the evidence presented during trial as follows:

1. Andrea Delsandro—Trial Testimony:

The Commonwealth presented the testimony of the victim, Andrea
Delsandro . . . Appellant and Delsandro had been in a relationship
for close to five years.  In approximately mid-May 2018, Appellant

---

* Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2706(a)(1), 2701(a)(1), 5503(a)(1), and 2709(a)(1), respectively.

and Delsandro separated. They were the parents of a three-year old and Delsandro was pregnant with their second child. A [P]rotection [F]rom [A]buse [o]rder was entered on June 25, 2018, forbidding Appellant from contact with Delsandro.

Two days later, on June 27, 2018, Delsandro gave birth to her and Appellant's second child at St. Vincent's Hospital in Erie, Pennsylvania. On June 28, 2018, Delsandro was moved from the birthing room into the recovery room on the 5th Floor of the hospital. Later that day, Appellant came to Delasandro's room at the hospital where she was lying in bed with the baby. Appellant sat down approximately six feet away. Appellant was initially calm and made statements to Delsandro about his mental health issues and history. This conversation caused Delsandro concern. Appellant informed Delsandro he tried different coping mechanisms and nothing had worked. Appellant then displayed agitation and became confrontational with Delsandro. He advised he was upset about the name Delsandro had given the child. Appellant then stood up and advanced toward Delsandro and the baby. Appellant held two fingers up and told Delsandro he was this close to getting a gun and blowing her head off, shooting the child, and shooting himself. Appellant told Delsandro he was going to kill her father and bury him in the backyard, and then go after her mother. Appellant advised of his plan to retrieve guns at his parents' residence and follow through with his threats. With the prior knowledge Appellant had access to guns at his parents' residence, Delsandro took Appellant's threats seriously. Next, Appellant grabbed Delsandro's cell phone and told her she wouldn't need it anymore.

During the five-minute encounter with Appellant, Delsandro became increasingly afraid and pressed the call button for the nurse several times. Finally, when Appellant grabbed her phone, Delsandro screamed out loud for help. She was shaking, fearful and anxious. Nurse Aubrey Lucas responded and stepped between Appellant and Delsandro, instructing Appellant to leave. After Appellant exited the room, Delsandro telephoned her landlord as she was afraid Appellant was headed to retrieve weapons from the property. Lucas notified the police what had occurred. Delsandro continues to suffer flashbacks, anxiety and fear from the incident.

2. Audrey Lucas, LPN—Trial Testimony:

The Commonwealth presented the testimony of Audrey Lucas, LPN . . . On June 28, 2018, Lucas was working at St. Vincent's Hospital for the postpartum department on Floor 5 North. Floor 5 North is a locked unit for safety reasons. A picture of Appellant was posted at the nurses' station to alert staff Appellant was not permitted on the floor. Lucas had seen the picture. Lucas was also aware Delsandro was a "Code Purple," which meant that the fact of Delsandro's admission was not to be revealed to certain persons.

While in a patient room next to Delsandro's room, Lucas heard a "blood-curdling scream." Lucas stepped into the hall and observed the door to Delsandro's room was closed. Lucas opened the door and saw Appellant leaning over the hospital bed and Delsandro on her knees in the bed, appearing visibly upset. Lucas recognized Appellant as the man in the picture posted at the nurses' station. Lucas contacted security. She advised Appellant to leave immediately.

3. Christopher Szustak—Trial Testimony:

The Commonwealth presented the testimony of Christopher Szustak, Manager of Security Operations at St. Vincent's Hospital . . . Szustak is the Manager of Security Operations at St. Vincent's Hospital. Szustak was working on June 28, 2018. He testified an alert had been issued by security that Appellant had tried to access the 5th floor at approximately 12:30 a.m. or 1:00 a.m. that day via the emergency room entrance but had been turned away by security due to the active PFA. At that time, Appellant was informed of the reason he was prohibited entrance. Video surveillance showed Appellant returned to St. Vincent's Hospital later that morning or early afternoon and accessed the 5th floor by following staff members through the locked doors and bypassing the security desk. Shortly thereafter, security received a panicked call from staff members on the 5th floor requesting security help and reporting Appellant was on the floor. All six security officers on-duty were dispatched to the 5th floor, and calls were made to second-shift officers to come in early to assist. Appellant had left the 5th floor by the time security arrived, so the officers began gathering information and reviewing video footage to determine Appellant's movements. Guards were stationed outside Delsandro's room, the nurses' station, and the main lobby to ensure Appellant did not return. Delsandro was moved to

another secure unit. These security measures, which ultimately resulted in a hospital lockdown, were the most extreme measures Szustak ever had to employ during his eight-year tenure at the hospital.

4. Officer Mark Schroeck—Trial Testimony:

The Commonwealth presented the testimony of Officer Mark Schroeck . . . Officer Schroeck is employed by the City of Erie Police Department. On June 28, 2018, Officer Schroeck was dispatched to the 5th floor of St. Vincent Hospital for a PFA violation. Upon arriving at Delsandro's hospital room, Schroeck found her in an emotional and distraught state. Delsandro provided a copy of the PFA and a description of Appellant and his vehicle along with his current address. Officer Schroeck confirmed Appellant had been verbally notified of the PFA prior to June 28, 2018.

Appellant's vehicle was located at his residence. The SWAT team was dispatched to Appellant's residence due to the nature of the threats Appellant had made and the ensuing hospital lockdown. After two hours, Appellant finally surrendered to police and was arrested.

5. Appellant—Trial Testimony:

Appellant's relevant testimony is summarized herein. The basis for the PFA filed on June 25, 2018 was that on May 20, 2018, Appellant took Delandro's arm and wrapped it around her body in order to retrieve his cell phone. He denied choking her. He admitted that on June 9, 2018, he was angry, broke chairs and threw glass and knives at Delsandro's residence. Appellant admitted that on June 18, 2018, he and Delsandro argued and it "may or may not be so" that he told her he was going to have a "b- - - -" beat her "a- -" and throw her down the stairs. Appellant did not view the incidents as threatening.

Appellant claimed he thought he and Delsandro were dating up through June 28, 2018. Prior to June 28, 2018, Erie County Sheriff John Loomis notified Appellant about the PFA and that he was evicted from the residence. Appellant admitted he went to St. Vincent's hospital at approximately 4:00 a.m. or 4:30 a.m. on June 28, 2018; he was stopped by security and informed there was an active PFA against him. Appellant returned to the hospital

later that day with the intention of seeing his son. He went directly to Delsandro's room on the 5th floor without stopping at security. He noticed the newborn's name written on the dry erase marker board in Delsandro's room. Appellant went over to the board and crossed off part of the name. Appellant admitted he and Delsandro had a heated conversation regarding infidelities. Appellant admitted he stood up, grabbed Delsandro's phone, and told her she didn't need it anymore. He further admitted Delsandro screamed and Nurse Lucas rushed to the room and informed him he could not be in the hospital. Appellant left the hospital. When the SWAT team arrived at the residence, Appellant testified he engaged in the standoff with the police because Appellant felt it was a joke.

Trial Court Opinion, 6/12/19, at 5-10 (citations to the record omitted).

Following a non-jury trial, the trial court found Appellant guilty of the aforementioned charges. On February 13, 2019, the trial court imposed sentence. Appellant filed timely post-sentence motions, which the court denied on March 5, 2019. On April 3, 2019, Appellant filed a timely notice of appeal and a Pa.R.A.P. 1925(b) statement of matters complained of on appeal challenging the sufficiency of the evidence.

On June 12, 2019, the trial court filed a Pa.R.A.P. 1925(a) opinion asserting that Appellant waived his challenges to the sufficiency of the evidence due to the vagueness of his Rule 1925(b) statement. The trial court stated that even if Appellant did not waive his sufficiency challenges, they were devoid of merit.

On July 22, 2019, Appellant filed an application for relief in this Court requesting leave to amend his Rule 1925(b) statement. On August 2, 2019, this Court remanded the record to the trial court to allow Appellant to file an amended Rule 1925(b) statement and directed the trial court to file a

supplemental Rule 1925(a) opinion. On August 9, 2019, Appellant filed an amended Rule 1925(b) statement in the trial court. On September 24, 2019, the trial court filed a supplemental opinion incorporating its August 2, 2019 opinion by reference and concluding, once again, that Appellant's sufficiency claims were without merit.

On April 28, 2020, this Court entered a memorandum affirming Appellant's judgment of sentence. We concluded that Appellant waived his challenge to the sufficiency of the evidence due to the vagueness of his original Rule 1925(b) statement. On May 6, 2020, Appellant filed a timely application seeking reconsideration on the ground that he had cured the defect in his original Rule 1925(b) statement by filing a supplemental Rule 1925(b) statement in the trial court. He further pointed out that the trial court filed a supplemental opinion in which it reviewed his sufficiency challenge on the merits. On June 10, 2020, we granted panel reconsideration, withdrew our April 28, 2020 memorandum, and instructed that the parties need not file any additional briefs.[2] We now review the merits of the arguments raised in this appeal.

Appellant raised the following argument in his brief, "[w]hether the Commonwealth failed to present sufficient evidence to find [A]ppellant guilty

---

[2] Appellant's Brief does not comply with Pa.R.A.P. 2111, as Appellant failed to include a copy of the statements of errors complained of on appeal, **see** Pa.R.A.P. 2111(a)(11), (d), and a copy of the supplemental Rule 1925(a) opinion, **see** Pa.R.A.P. 2111(a)(10), (b). We note that reconsideration might not have been necessary had Appellant complied with these rules.

beyond a reasonable doubt of terroristic threats, simple assault, and disorderly conduct[.]" Appellant's Brief at 3. Appellant does not challenge the sufficiency of the evidence underlying his conviction for harassment.

When reviewing a challenge to the sufficiency of the evidence, we determine "whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all the elements of the offense." **Commonwealth v. Cline**, 177 A.3d 922, 925 (Pa. Super. 2017) (citation omitted). "This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt." **Commonwealth v. Hardcastle**, 546 A.2d 1101, 1105 (Pa. 1988) (citation omitted). "The finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." **Commonwealth v. Brown**, 186 A.3d 985, 991 (Pa. Super. 2018). In reviewing a challenge to the sufficiency of the evidence, we may not weigh the evidence and substitute our judgment for the fact-finder. **Id.** at 990.

The Crimes Code provides that the defendant commits the crime of terroristic threats when he "communicates, either directly or indirectly, a threat to . . . commit any crime of violence with intent to terrorize another." 18 Pa.C.S.A. § 2706(a)(1). This offense is a first degree misdemeanor "unless the threat causes the occupants of the building, place of assembly or facility

of public transportation to be diverted from their normal or customary operations" in which case it is a third degree felony. 18 Pa.C.S.A. § 2706(d). Construed in the light most favorable to the Commonwealth, the evidence supports Appellant's conviction for terroristic threats, graded as a third degree felony. The trial court reasoned:

> The evidence as described herein sufficiently established not only did Appellant threaten to kill Delsandro, the newborn child, and her father and with the intent to cause terror to Delsandro, but also that Appellant's threats further caused St. Vincent's Hospital to divert its normal operations. All on-duty security personnel responded to the incident and were diverted from their normal duties. Additional security officers were called in early to assist. Delsandro and the baby had to be moved to another room. The entire facility was put on lockdown. The head of security at the hospital had never seen measures as extreme as this taken during his tenure.

Trial Court Opinion, 6/12/19, at 10-11. We agree with this reasoning.

With regard to Appellant's misdemeanor conviction for terroristic threats, we note that Delsandro testified that "[Appellant] was this close to getting a gun and blowing her head off, shooting the child, and shooting himself. Appellant told Delsandro that he was going to kill her father and bury him in the backyard, and then go after her mother." *Id.* at 6 (citation to the record omitted). Delsandro knew that Appellant had guns and feared his threat was serious. Moreover, Appellant went to considerable lengths to convey this threat by evading hospital security and defying his PFA order. Furthermore, the Commonwealth presented three additional witnesses corroborating the victim's testimony. As noted above, the trial court, sitting

as trier of fact, was free to believe the testimony of the Commonwealth's witnesses over Appellant's version of the facts. We cannot reweigh the evidence or make credibility assessments. **Brown**, 186 A.3d at 990. Thus, Appellant's challenge to the sufficiency of the evidence underlying his convictions of terroristic threats is without merit.

Turning to Appellant's conviction for simple assault, the Crimes Code provides that the defendant is guilty of this offense if he "attempts by physical menace to put another in fear of imminent serious bodily injury." 18 Pa.C.S.A. § 2701(a)(3). The evidence clearly establishes all elements of this offense. As the trial court observed:

> Appellant is twice the size of Delsandro. Delsandro was confined to a hospital bed, having just given birth hours earlier. With Delsandro in this condition, Appellant approached her, hovered over her, told her he was going to get a gun to shoot her and the newborn in the head, and physically grabbed the phone from her hand. Delsandro had been paging for help during the encounter and let out a "blood–curdling scream." When Lucas arrived in the room, she observed Appellant still hovering over Delsandro. Delsandro was visibly upset and shaking.

Trial Court Opinion, 6/12/19, at 12. We agree with this analysis and reject Appellant's challenge to the sufficiency of the evidence on this charge.

Finally, with regard to Appellant's conviction for disorderly conduct, the Crimes Code provides that a defendant is guilty of this offense "if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he . . . engages in fighting or threatening, or in violent or tumultuous behavior." 18 Pa.C.S.A. § 5503(a)(1). The trial court wrote:

> The elements of th[is] crime were satisfied. The evidence established Appellant made violent threats to Delsandro and the threats in a public inconvenience . . . Appellant's actions resulted in the lockdown of the hospital and staff was diverted from their usual duties to deal with the situation Appellant had created. Public resources were expended to address the situation Appellant had created by his words and actions. The evidence was sufficient to convict Appellant of disorderly conduct.

Trial Court Opinion, 6/12/19, at 12-13 (unnecessary capitalizations omitted).

We agree with the trial court's analysis and conclusions.

For these reasons, we hold that Appellant's challenge to the sufficiency of the evidence is devoid of merit.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/15/2020